**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ARNOLD HAMOVITZ, )
 )
    Plaintiff, )
 ) 2: 07-cv-0454
v. )
 )
SANTA BARBARA APPLIED RESEARCH, )
INC., and MAYTAG AIRCRAFT CORP., )
 )
    Defendants. )

**MEMORANDUM OPINION AND ORDER OF COURT**

October 19, 2010

    On December 8, 2008, Plaintiff, Arnold Hamovitz, filed his Second Amended Complaint in which he alleges that the decision of Defendants Santa Barbara Applied Research ("SBAR") and/or Maytag Aircraft Corp. ("Maytag") to terminate his employment and/or failure to hire him was in violation of his rights under the Uniform Services Employment and Reemployment Rights Act, as amended, 38 U.S.C. § 4301 *et seq*. ("USERRA"), and the Pennsylvania Military Affairs Act ("PMAA"), as amended, 51, Pa. C.S.A. § 7301, *et seq*., as well as any common-law wrongful discharge / failure to hire claim derived from the public policy underlying the PMAA. *See* Second Amended Complaint, ¶¶ 1 and 2.

    In his Pretrial Statement, Plaintiff states that although the Court previously ruled that he was not entitled to recover punitive damages under either USERRA and/or the PMAA, because he "has also alleged a cause of action for wrongful discharge / refusal to hire in violation of the public policy of the Commonwealth of Pennsylvania prohibiting adverse employment actions against employees on account of their National Guard and/or Reserve obligations, . . . a common law claim exists to which compensatory damages for emotional distress, embarrassment and

1

humiliation as well as <u>punitive damages</u> are recoverable." *See* Pl's Pretrial Statement, at 14 (emphasis added).  Both Defendants strongly argue that Plaintiff is not entitled to pursue a common law tort action and to recover punitive damages thereunder, and therefore, request that the Court reject Plaintiff's common law claim for wrongful discharge / refusal to hire.[1]

Defendants present three arguments in support of their position:  (i) that the Court has previously ordered "without limitation" summary judgment on Plaintiff's claim that he is entitled to recover punitive damages; (ii) that Pennsylvania does not recognize a common law tort for failure to hire; and (iii) even if the existence of such a common law tort existed, no such common law action can be asserted where either federal or state statutory remedies exist.

The Court acknowledges that resolution of this issue is unquestionably a close call.  But after a careful and deliberate review of the filings, both in support and in opposition, as well as the relevant statutory and case law, the Court finds that each of Defendants' arguments is without merit.  Accordingly, the Court finds and rules that under the unique facts and circumstances of this particular case, Plaintiff is entitled to pursue a common law tort action for wrongful refusal to hire, which may entitle him to additional tort damages, including punitive damages.

Defendants' arguments will be addressed seriatim.

### 1. The Court Has Not Previously Addressed Plaintiff's Common Law Claim

Defendants contend that the Court's decision on their respective motions for summary judgment decided whether Plaintiff had a wrongful discharge / refusal to hire claim.  The Court finds this argument to be without merit.  After closely re-examining the motions for summary

---

[1]  As is reflected in the number of filings, this is a hotly contested issue among the parties. Although there is no actual motion pending which requests that the Court reject Plaintiff's common law claim, in an attempt to have this case ready for its January 3, 2011 trial date, the Court will rule upon the issue, without an actual motion having been asserted.

judgment and the briefs in support, as well as the Report and Recommendation filed by Magistrate Judge Lenihan (Document No. 106), and the Memorandum Opinion and Order adopting the Report and Recommendation (Document No. 114), the Court fails to find that either Defendant ever mentioned, referenced, or advanced an argument regarding Plaintiff's common law claim(s) in their respective motions.

On the other hand, the issue of punitive damages was raised by Defendants but only in the context of whether such damages were recoverable under USERRA. On that limited issue, the Court found in favor of Defendants, *to wit*: "[a]s noted, . . . USERRA provides for liquidated damages but not punitive damages in the case of 'willful' violation. Under the facts *sub judice*, . . . , the Report concludes that there are material fact questions relevant to Defendants' liability for liquidated damages, and that summary judgment is therefore precluded." Report and Recommendation, at 31[2] (emphasis added).

Therefore, the Court finds and rules that, prior to the instant Memorandum Opinion, the issue of punitive damages incident to a wrongful discharge / refusal to hire common law claim has not been addressed by the Court or any of the parties.

---

[2] *See also* Report and Recommendation at 12, wherein the Magistrate Judge, again addressing only USERRA, stated the following: "Under the USERRA, the District Court may use its full equity powers and award compensatory damages for lost wages or benefits. If the Court determines that an employer's violation was willful, it may award liquidated damages in an amount equal to the compensatory damages." The Court also observed that "neither the USERRA nor the PMAA, which mirrors it, contain any provision for punitive damages." R&R at 12, n. 16. The Report and Recommendation contains absolutely no discussion of punitive damages under the common law claim of wrongful discharge / refusal to hire.

2. <u>USERRA Does Not Provide Plaintiff With An Exclusive Remedy</u>

Next, Defendants argue that Congress intended USERRA to replace common law tort causes of action. When considering a preemption claim, the Court must "start with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress'." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The purpose of Congress, therefore, is the ultimate touchstone of the preemption analysis. *Id*.

The purpose of Congress "may be 'explicitly stated in the statute's language or implicitly stated in its structure and purpose." *Cipollone,* 505 U.S. at 516 (*quoting Jones v. Rath Packing Co*., 430 U.S. 519, 525 (1977)). If the enacted legislation contains a provision explicitly addressing the issue of preemption, and if that provision "provides a reliable indicium of congressional intent with respect to state authority," the court need only identify the domain expressly preempted. *Cipollone,* at 517 (internal quotations omitted). Matters that do not fall within the domain are not preempted. *Id.*

Section 4302 of Title 38, United States Code, governs the relationship of USERRA to other federal and state laws. In pertinent part, section 4302 states:

> (a) Nothing in [USERRA] shall supersede, nullify, or diminish any Federal <u>or State law</u> (including any local law or ordinance) . . . that establishes <u>a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in USERRA</u>.
>
> (b) [USERRA] supersedes any State law (including local law or ordinance) . . . that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA].

38 U.S.C. § 4302 (emphasis added).

4

As Plaintiff correctly points out, nothing in the statutory language suggests that state law tort causes of action are pre-empted by USERRA.  Furthermore, there is no indication in the legislative history of USERRA that state law tort causes of action should be preempted by USERRA.  *See* H.R. REP. No. 103-65 (1994), as reprinted in 1994 U.S.C.C.A.N. 2449; *Reyes v. Goya v. Puerto Rico, Inc.,* 632 F. Supp.2d 142 (D. Puerto Rico 2009) (holding that "[n]othing in the statutory language suggests that state tort law causes of action are pre-empted by USERRA"); *Slater v. Verizon*, 2005 WL 488676 (D.N.H. 2005) (allowing wrongful discharge claim because USERRA specifically provides that it shall "not nullify . . .any state law . . . that establishes a right or benefit that is more beneficial to, or in addition to, a right or benefit provided for such person.")

Accordingly,  the Court finds that neither the language of USERRA explicitly bars Plaintiff's common law claims nor does the structure and purpose of USERRA bar such common law claims.  This finding, however, does not end the analysis as the Court must next determine whether Pennsylvania would recognize a common law tort claim for refusal to hire.

3. <u>Pennsylvania Would Recognize a Common Law Tort Claim For Refusal to Hire Under the Unique Facts and Circumstances of this Case</u>

Defendants argue that Pennsylvania does not recognize a common law tort for refusal to hire.[3]  In response, Plaintiff maintains that the Pennsylvania Military Affairs Act unequivocally establishes the public policy of the Commonwealth of Pennsylvania which prohibits discriminating against employees or prospective employees on account of their military

---

[3]  The parties do not dispute that a "wrongful discharge" tort has been recognized in Pennsylvania in limited circumstances.  However, because Plaintiff was never employed by either Defendant, he has also brought a "failure to hire" tort claim.

5

obligations. It appears that the issue of whether a refusal to hire violates public policy as established by the PMAA is a question of first impression. Accordingly, the Court has sought guidance from those legal decisions which have examined the issue of whether a wrongful termination violated public policy.

In *Geary v. United States Steel Corporation*, 319 A.2d 174 (1974), the Supreme Court of Pennsylvania first acknowledged, in *dicta*, the possible existence of an exception to the at-will doctrine when the discharge is motivated by a specific intent to harm the employee or violated a clear mandate of public policy. The court observed that:

> It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly, where some recognized facet of public policy is threatened . . . .

319 A.2d at 180 (emphasis added). Since *Geary* was decided, the Pennsylvania Supreme Court has addressed only on rare occasions the arguments for a public policy exception to the employment at will doctrine. S*ee Rothrock v. Rothrock Motor Sales, Inc*., 883 A.2d 511 (Pa. 2005) (finding that supervisor's discharge violated public policy of protecting employee's who seek worker's compensation benefits when employer's reason for termination was that supervisor had refused to dissuade subordinate employee from seeking worker's compensation benefits); *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998) (finding that an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim has stated a cause of action for which relief may be granted under the law of the Commonwealth); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d. 917 (Pa. 1989) (finding that plaintiff's claims of sexual harassment were barred under the Pennsylvania Human Relations Act, but acknowledging that the court in *Geary* had recognized a public policy exception to the employment at will doctrine).

6

Nevertheless, since *Geary*, the Pennsylvania Superior Court has consistently recognized the existence of the public policy exception to the at-will doctrine of employment. *Rutherfoord v. Presbyterian-Univ. Hosp*., 612 A.2d. 500, 506 n.4 (Pa. Super. 1992) ("The public policy exception to the at-will doctrine of employment has been consistently recognized in Pennsylvania.")  Sources from which public policy is drawn may include legislation, administrative rules, regulations, and judicial decisions. *Cicso v. United Parcel Services, Inc.,* 476 A.2d at 1342-43.

Courts applying Pennsylvania law have allowed lawsuits for wrongful termination on public policy grounds only when the dismissal was itself based on an unlawful ground or otherwise subverted the law as recognized in the Commonwealth, for example by punishing plaintiff for exercising rights or fulfilling duties granted or imposed by statute. *See Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3d Cir. 1988) (a replacement of an employee for her refusal to sell liquor to a visibly intoxicated person was found violative of the Pennsylvania Liquor Code and the predicate for the tort of wrongful discharge); *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir. 1983) (the removal of employee for his unwillingness to participate in the company's lobbying efforts was held to concern, under Pennsylvania law, the right to political expression and association entitled to protection); *Perks v. Firestone Tire & Rubber Co*., 611 F.2d 1363 (3d Cir. 1979) (dismissal for failure to take a polygraph test was held to violate public policy since such testing, as a condition of employment, was proscribed by the Pennsylvania Crimes Code);  *Sorge v. Wright's Knitwear Corp.,* 832 F. Supp. 119 (E.D. Pa. 1993) (under Pennsylvania law, discharge for reporting safety violations to OSHA would violate public policy embodied in federal statute protecting employees who voluntarily file complaints under Occupational Safety and Health Act); *Shick*, 716 A.2d at 1231

(plaintiff discharged for filing workers' compensation claim); *Highhouse v. Avery Transp.*, 660 A.2d 1374, 1378 (Pa. Super. 1995) (plaintiff dismissed for filing unemployment compensation claim); *Kroen v. Bedway Security Agency*, 633 A.2d 628, 633 (Pa. Super. 1993) (plaintiff terminated for refusing to take polygraph test, when employer's use of such test was forbidden by statute); *Hunter v. Port Authority of Allegheny County*, 419 A.2d 631 (Pa. Super. 1980) (an applicant's denial of work for his failure to disclose a 13-year old misdemeanor count, for which he had been unconditionally pardoned, entitled him to a cause of action for wrongful refusal to hire); *Reuther v. Fowler & Williams, Inc.,* 386 A.2d 119, 120 (Pa. Super. 1978) (discharge of an employee for his responding to a notice of jury duty was held violative of a clear mandate of public policy).[4]

In contrast, when the public policy claimed to be violated is not "clear," a cause of action for wrongful discharge has not been recognized. *See Scott v. Extracorporeal Inc.,* 545 A.2d 334 (Pa. Super. 1988), where an employee was discharged for fighting on company property (alleged public policy was one's right to act in self-defense as articulated in section 505 of the Pennsylvania Crimes Code, 18 Pa.C.S. §505); *Martin v. Capital Cities Media Inc*., 511 A.2d 830 (Pa. Super. 1986), where a newspaper employee was discharged for placing a commercial advertisement in a rival newspaper (alleged public policy was violation of Pennsylvania Constitution Article 1, sections 1 and 7); *Cisco v. United Parcel Services, Inc.*, 476 A.2d 1340 (Pa. Super. 1984), where an employee was discharged after being accused of theft and trespass in connection with his employment and was refused re-employment when acquitted of the charges.[5]

---

[4] The Pennsylvania Supreme Court has not yet addressed the public policy exceptions under the circumstances of these cases.

[5] Although the court recognized a public policy expressed in the Pennsylvania Criminal History Records Information Act, that a criminal accusation is not a fair consideration by an

8

While neither the Pennsylvania Supreme Court nor the United States Court of Appeals for the Third Circuit has yet to define the exact parameters of the public policy exception in Pennsylvania, our Court of Appeals has attempted to "draw certain principles that govern what an employee must show to make out a claim for wrongful discharge under Pennsylvania's public policy exception to the principle of at-will employment." *Clark v. Modern Group Ltd.*, 9 F.3d 321, 328 (3d Cir. 1993).[6] In *Clark*, our appellate circuit court stated:

> an at-will employee invoking Pennsylvania's public policy exception must show his discharge offended a clear mandate of public policy by result[ing] from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law. 'The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employees compliance with or refusal to violate the law.' . . . We see little evidence in the Pennsylvania cases to date that an alleged public interest will be recognized as a 'clear mandate of public policy' in the absence of a legislative or constitutional endorsement in the form of a specific prohibition, requirement or privilege.

*Clark*, 9 F.3d at 328 (*quoting Smith v. Calgon Carbon Corp.*, 917 F.2d 1338 (3d Cir. 1990), *cert. denied*, 499 U.S. 966 (1991)). Emerging from this jurisprudence would seem to be the rule that,

---

employer in not hiring an individual, the court found that it was not a violation of public policy to discharge when the employer, for legitimate business reasons, could not risk employing an individual who was under suspicion of having committed theft and trespass when the nature of the business was to enter premises of others and deliver parcels.

[6] The difficulty in determining the scope of the public policy exception to Pennsylvania's at-will employment arises from the perils of forecasting the position the supreme court of a state will take on an as-yet undecided issue, as the court is required to do in diversity actions. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also*, Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction through the Lens of Federalism*, 78 Va.L.Rev. 1671, 1675-81 (1992) ("[T]he state courts have found fault with a not insignificant number of past 'Erie guesses' made by the Third Circuit and our district courts."). When there is scant guidance from a state's highest court, intermediate appellate decisions may suggest how the supreme court might rule and "may constitute presumptive evidence of state law in appropriate circumstances." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir. 1992).

to uphold an action for wrongful termination in violation of public policy, a court must find a public policy that is "clear and specific." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 617 (3d Cir. 1992).

In Pennsylvania, a case-by-case analysis has been adopted in reviewing a wrongful discharge cause of action. *See Rossi v. Pennsylvania State Univ.*, 489 A.2d 828, 831-32 (Pa. Super. 1985). Turning to the case *sub judice*, such an approach is apropos as the central question raised herein appears to be a question of first impression: whether Pennsylvania would apply the public policy exception in a situation where a private employer has wrongfully refused to hire a member of the National Guard or any one of the other reserve components upon his return from active duty service.

Plaintiff argues that Defendants' refusal to hire him violated a clear mandate of public policy pursuant to the PMAA. After analyzing the language of that Act, the Court has no trouble concluding that the PMAA is a public policy that is "clear and specific." The PMAA provides in pertinent part, as follows:

> **(a) General rule**. - It is unlawful . . . for any private employer to <u>refuse to hire</u> or employ any individual not on extended active duty because of his membership in the National Guard or any one of the other reserve components of the armed forces of the United States, . . ., or to otherwise discriminate against such individual with respect to compensation, <u>hire,</u> tenure, terms, conditions or privileges of employment because of such membership, . . . .

51 Pa. C.S.A. § 7309(a) (emphasis added).

Also instructive, although not directly on point, is *Hunter v. Port Authority of Allegheny County*, 419 A.2d 631 (Pa. Super. 1980). In *Hunter,* the Superior Court found a violation of public policy in an employer's refusal to hire based upon the fact that the prospective employee had been convicted of assault more than ten years earlier and subsequently had been pardoned. The court concluded that Article I, § 10 of the Pennsylvania constitution (protecting an

individual's right to engage in any of the common occupations of life) and the decision of the Pennsylvania Supreme Court in *Secretary of Revenue v. John's Vending Corp.*, 309 A.2d 358 (Pa. 1973) (where prior convictions do not reflect upon applicant's present ability to discharge responsibilities required of licensed wholesale cigarette vendor) made out a clear public policy to avoid unwarranted stigmatization of and unreasonable restriction upon former offenders, which policy was violated by the employer's actions. Thus, in *Hunter*, the "clear mandate of public policy" based on the constitutional provision was found to be violated by the employer's refusal to hire despite the fact that such refusal was neither violative of a specific criminal statute nor based upon the prospective employee's performance of a statutorily required duty. While *Hunter* is distinguishable from the instant case because it involves a public employer, it nevertheless teaches that public policies regarding employment may be found where an employer's actions impinge upon protected rights of employees.

As the district court stated in *Tukesbrey v. Midwest Transit, Inc.,* 822 F. Supp. 1192, 1201 (W. D. Pa. 1993), "[m]aintaining the readiness and efficiency of our National Guard and ensuring the job security of its members is an important public policy canonized in statutory and constitutional provisions. *See, e.g.,* 51 Pa. C.S.A. § 1101, *et seq.* and § 7301, *et seq.*"

In this case, Plaintiff contends that Defendants' refusal to hire him was wrongful because it violated the public policy, embodied in the PMAA, which prohibits discriminating against "any individual . . . because of his membership in the National Guard or any one of the other reserve components of the armed forces of the United States. . . ."

The Court agrees with the sentiments expressed by the *Tukesbrey* court, namely that the public policy against adverse employment actions as canonized in the PMAA is "an important public policy" which is "clear and specific." Given the unique facts and circumstances of this

11

particular case, the Court finds and rules that the Pennsylvania Supreme Court would recognize a refusal to hire claim in violation of public policy based on grounds covered by the PMAA.

The Court's analysis does not end here, however. Next, the Court must determine whether Plaintiff is entitled to seek additional remedies not available under USERRA or the PMAA.

### 4. Additional Remedies Are Available Under Common Law

The final step in this analysis is the determination of whether Plaintiff is entitled to seek remedies that are not available under USERRA and/or the PMAA, specifically punitive damages. Defendants argue that "even if the existence of [a refusal to hire] tort could be inferred from the wrongful discharge cases, Pennsylvania case law also makes it clear that no such common law action can be asserted where either federal **or** state statutory remedies exist."

Plaintiff responds that the statutory remedies available under USERRA "do not preclude a common law wrongful discharge claim for the violation of the (sic) and distinct, albeit corresponding public policy of the Commonwealth of Pennsylvania." Pl's Sur Reply at 5.[7]

Under USERRA, a court may award relief as follows:

> (A) The court may require the employer to comply with the provisions of this chapter.
>
> (B) The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.
>
> (C) The court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

---

[7] The PMAA unequivocally does not provide any remedies for adverse employment actions.

38 U.S.C. § 4323(d). This Court has previously ruled that while USERRA provides for liquidated damages in the case of a "willful" violation, USERRA does not provide for punitive damages.

While USERRA provides individuals such as Plaintiff with a cause of action, it also specifically provides that:

> [n]othing in this chapter shall supercede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is <u>more beneficial to, or in addition to, a right or benefit provided for such person in this chapter</u>.

38 U.S.C. § 4302(a) (emphasis added).[8] "Given the rather plain language of USERRA, it is apparent that Congress did not intend to replace any common law remedy that might also be available to plaintiff." *Slater v. Verizon Communications, Inc*., 2005 WL 488676 (D.N.H. 2005); s*ee also House v. Metal Transp. Systems, Inc.*, 2010 WL 1068058 (N.D. W. Va. 2010) (court awarded damages under USERRA and West Virginia common law for wrongful termination); *Patton v. Target,* 2007 894560 (D. Oregon 2007) (finding that common law wrongful discharge claim was appropriate because USERRA does not provide recovery for any non-economic damages and emotional losses or a full range of punitive damages).

The Court would be remiss if it did not acknowledge that federal courts in Ohio have concluded that USERRA provides its own adequate remedies for violations and thus a plaintiff may not maintain an Ohio tort action for wrongful discharge in violation of public policy based

---

[8] USERRA does have a preemption provision, but that provision applies only to state laws that <u>limit</u> the rights or benefits available thereunder, or that impinge upon the exercise of those rights, <u>not</u> to state laws that expand upon or supplement the rights available under USERRA. *See* 38 U.S.C. § 4302(b)

on grounds covered by USERRA.  *See Martin v. AutoZone, Inc.,* 411 F. Supp.2d 872 (S. D. OH 2005); *Schmauch v. Honda of Am. Mfg*., 311 F. Supp. 2d 631, 635 (S.D. OH 2003).

Nonetheless, the Court agrees with the reasoning of those courts which have found that USERRA remedies do not appear to be exclusive.  Although Plaintiff could be reinstated and recover lost pay and benefits if he successfully proves his USERRA claims, there does not appear to be any statutory basis to compensate Plaintiff for any noneconomic damages and emotional losses which may have resulted from Defendants' alleged wrongful refusal to hire him or for a full range of punitive damages.

In this case, Plaintiff asserts that he suffered emotional distress, embarrassment, and humiliation as a result of Defendants' alleged wrongful conduct.  Because USERRA does not provide any meaningful route to compensation for these types of alleged losses, and in light of the plain language of USERRA, the Court finds and rules that  Plaintiff's remedies under USERRA do not appear to be exclusive.  Accordingly, Plaintiff is entitled to seek additional tort damages, including compensatory damages for emotional distress, embarrassment and humiliation, as well as punitive damages, as are available under Pennsylvania common law.

So **ORDERED** this 19th day of October, 2010.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Timothy P. O'Brien, Esquire
      Email: tob@obrien-law.net

      Helene G. Bradley, Esquire
      McBreen & Kopko
      Email: hbrad5@aol.com

      Thomas J. Bradley, Esquire
      McBreen & Kopko
      Email: tjbradley@mcbreenkopko.com

      Gary T. Vanasdale, Esquire
      Gilliland Vanasdale Papp Law Office
      Email: gtv@gvplawoffice.com

      A. Patricia Diulus-Myers, Esquire
      Jackson Lewis LLP
      Email: diulusmp@jacksonlewis.com